IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JODIE SHAWNTALE PENNIX, ) | CASE NO. 7:19CV00051 |
| ) | |
| Plaintiff, ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| HAROLD CLARKE, ET AL., ) | By: Glen E. Conrad |
| ) | Senior United States District Judge |
| Defendants. ) | |

Plaintiff Jodie Shawntale Pennix, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that correctional officers used excessive force against him, in violation of his constitutional rights. After review of the record, the court concludes that the defendants' motion for summary judgment must be denied.

I.

In addressing the defendants' motion to dismiss, the court summarized the allegations in Pennix's verified complaint as follows:

> In 2018, Pennix was confined at River North Correctional Center ("RNCC"), a prison facility operated by the Virginia Department of Corrections ("VDOC"). He alleges the following sequence of events on which he bases his § 1983 claims. On May 18, 2018, officers searched Pennix's cell and discovered paraphernalia used to make wine. Defendants Dean, Lundy, and Lyons called Pennix and his cell mate into the hallway and told them they were being moved to segregation. Lyons frisked Pennix and then ordered him to kneel down to be handcuffed and shackled. Pennix asked several times for help kneeling because he has "bad knees." Mem. Supp. 3, ECF No. 1-2. Lyons refused to shackle Pennix unless he was kneeling.
>
> At this point, Dean "threw [Pennix] face-down onto the ground. [He] did not resist. Dean punched [him] in the face. Defendant Lundy kicked [Pennix] under his eye" and on his nose, then "dropped his knee onto [Pennix's] head several times." Id. While Pennix was on the ground, Dean and Lyons placed him in handcuffs and shackles. When he was fully restrained, they picked him up and escorted him outside. On the way, "Dean bent [Pennix's] left wrist backwards" and Lyons "torqued [his] right arm upwards . . . at a 30-45 degree angle and causing him to experience immense pain in his shoulder." Id. When Pennix

>complained that the officers were hurting him, "Dean bent [his] wrist even further," causing him to scream in pain. Id. at 4. Dean "threw [Pennix] into the cement face-first, causing him to get 'road rash' on his temple. He and Lyons started choking [Pennix] with his shirt." Id. Pennix told them that he could not breathe and was blacking out, and they loosened the shirt, picked him up, and escorted him to segregation with no further incident. From the incident, Pennix suffered "an abrasion on the left side of his face, a bloody nose, a cut under his right eye, cuts on his wrists and ankles, a lump on his left forehead," back and knee pain, and mental injury. Id.

Pennix v. Clarke, No. 7:19CV00051, 2019 WL 5445305, at *1 (W.D. Va. Oct. 23, 2019). The court dismissed all claims against VDOC Director Clarke, but directed defendants Dean, Lyons, and Lundy to file any motion for summary judgment regarding the alleged excessive force and state law assault and battery claims against them.

These defendants have moved for summary judgment, asserting that Pennix's version of events is contradicted by the defendants' affidavits and surveillance camera video footage. Defendants Lyons and Dean state that at approximately 9:20 a.m., after being placed in handcuffs, Pennix refused to comply with the order to kneel down to have leg restraints applied. He then stepped backwards away from the wall toward the officers, who placed him on the floor. The officers restrained him, assisted him in standing up, and began escorting him to Unit A-2. As they walked through the C-D slider door, Pennix dropped his shoulder, moved quickly to his left, and struck Dean in the chest. In response to this movement, Dean placed Pennix on the floor. During this encounter, Dean received abrasions to his right forearm. Officers then assisted Pennix to his feet and escorted him to Unit A-2 with no further incident. Dean, Lyons, and Lundy deny that they used excessive force against Pennix. Lundy states that he did not assist in restraining Pennix, because he was assisting with restraining and escorting Pennix's cell mate. In support of their affidavits, the defendants submit a number of video clips filmed by surveillance cameras along the route by which they escorted Pennix to Unit A-2. They assert

2

that this footage definitively proves that they did not use excessive force against Pennix as he has alleged.

Pennix has responded to the defendants' motion, making it ripe for disposition. He contends that the video does not show all the officers' actions and that material factual disputes remain, precluding summary judgment.

II.

The court should grant summary judgment only when the pleadings and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. On summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. Id. at 255. To be successful, the moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." Lexington-South Elkhorn Water Dist. v. City of Wilmore, Ky., 93 F.3d 230, 233 (6th Cir. 1996).

When a motion for summary judgment is made and is properly supported by affidavits, the nonmoving party may not rest on the mere allegations or denials in his pleadings. Anderson, 477 U.S. at 256. Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find in his favor. Id. at 256-57. Verified complaints by pro se prisoners are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based

on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). Where the plaintiff's version of events is so utterly discredited by unchallenged video footage that no reasonable jury could believe him, however, summary judgment is appropriate. See Scott v. Harris, 550 U.S. 372, 380-381 (2007) ("The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape."); accord Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008) ("[W]here, as here, the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape.").

It is well established that only "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Hudson v. McMillian, 503 U.S. 1, 5 (1992). On the other hand, not every malevolent touch by a prison guard amounts to a deprivation of constitutional rights. Id. at 9. Where officers apply force in a good faith effort to restore order and discipline, there is no excessive force. Id. at 6-7. Courts recognize that corrections officials must act "in haste, under pressure, and frequently without the luxury of a second chance." Whitley v. Albers, 475 U.S. 312, 321 (1986). Consequently, this court must give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Hudson, 503 U.S. at 7.

In this context, the court must inquire whether the official, subjectively, applied force "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm" and whether "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Id. at 6, 8. This subjective inquiry considers "the need for application of force, the relationship between that need and the amount of force used, the

4

threat reasonably perceived by the responsible official[ ], and any efforts made to temper the severity of a forceful response." Id. at 7. To prove the objective component of his excessive force claim, the plaintiff must show more than "de minimis uses of physical force" by the defendant. Id. at 10. In short, in considering an excessive force claim, the "core judicial inquiry [is] . . . the nature of the force—specifically, whether it was nontrivial and was applied maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010).

Taking Pennix's version of events in the light most favorable to him, a reasonable jury could conclude that the defendants maliciously used physical force against him, although he was merely telling them that kneeling was painful for him. In his account, the defendants also used more force than required to place him in restraints and caused him pain and injuries. Then, during the escort, according to Pennix, Dean and Lyons moved his arms in painful ways, threw him to the ground when he complained about such treatment, and used his shirt to restrict his breathing.

The defendants' version of the incidents describes actions Pennix took that they perceived as threats to security. They characterize their reactions as a good faith effort to address those threats and restore order. Lundy argues that he did not play any role in restraining or escorting Pennix. And a reasonable jury may well agree with the defendants' account.

The defendants argue that the video footage contradicts Pennix's claims sufficiently to eliminate material disputes of fact and support granting summary judgment for the defendants. The court cannot agree. There is no audio with any of the video clips. One video clip, labeled HU-D Counselor Hall, shows officers placing restraints on Pennix and his cell mate. Pennix is visible only from the shoulders up in the lower right corner of the view and most of Pennix's actions occur outside the camera's view. After officers take Pennix to the ground, the viewer can

see only officers' heads and shoulders, which block any sight of Pennix or the participants' activities.[1] One of the officers who was originally helping with the cell mate comes running over to the group around Pennix.[2] In short, most of the activity between the officers and Pennix occurs out of view of the camera, until they stand Pennix up and begin escorting him away from the area. Although Pennix is cuffed behind his back, the two escorting officers also have their arms braced under his arms and against his shoulders, forcing his arms back and away from his body.

Throughout most of the escort, Pennix appears to walk calmly as directed, bent forward by the officers holding his arms. In a video clip labeled HU-C Entry Door, the group escorting Pennix comes into view at the top right corner of the picture at quite a distance from the camera. They stop and at about 9:16:43 a.m., they move quickly to the ground.[3] The camera is far away from the action, the image is too blurry to capture accurately a depiction of exactly what is taking place, and it is impossible to pick out individuals' movements with any clarity. After several seconds, the group stands up again. Eventually, at about 9:17:30 a.m., they walk down the sidewalk toward the camera and out of view.

Both the plaintiff and the defendants may show the video footage to the jury and explain why they believe it bolsters their witnesses' testimony about what happened. But the court cannot find that the video clips' content so utterly discredits Pennix's account of the defendants'

---

[1] Two other video clips, labeled HU-D Pod 3 Entry and HU-D Pod 1 Entry, show some of the officers' actions in restraining Pennix. In each of them, however, a corner wall blocks the camera's view of most of the participants and their actions.

[2] While the court cannot identify individual officers on the video clips, prison investigators reported that defendant Lundy assisted Dean and Lyons in restraining Pennix at some point. See Mem. Supp. Summ. J. Ex. 4, at 2, ECF No. 26-4.

[3] The defendants provide evidence that Pennix received two disciplinary charges for his conduct on May 18, 2018—one for possession of intoxicants and the other for aggravated assault on a non-offender (Defendant Dean). Pennix failed to appear at the hearings on these charges and, as a result of his absence, was found guilty of both offenses. These guilty findings, based on the technicality of Pennix's failure to appear, have no bearing on the defendants' bid for summary judgment.

actions that no reasonable jury could be persuaded to rule in his favor as to one or more of his claims of excessive force or assault and battery. See Scott, 550 U.S. at 380-81. Rather, with or without the video, the court finds genuine issues of material fact in dispute as to Pennix's § 1983 claims of excessive force and his supplemental state law claims of assault and battery, including whether Pennix's actions in the hallway warranted his being taken to the ground, whether any of the three officers punched or kicked him during the restraint process, and whether Dean or Lyons used unnecessary force on his arms and hands during escort, threw him to the concrete merely for voicing complaints of pain, and choked him with his shirt for no reason. The court cannot resolve such disputes on summary judgment and, accordingly, must deny the defendants' motion. An appropriate order will enter this day.

**ENTER**: This 26th day of June, 2020.

_____
Senior United States District Judge